1  Ann E. Menasche, SB#74774
   Ann.menasche@disabilityrightsca.org
2  L. Bernadette Bautista SB#230384
   Bernadette.bautista@disabilityrightsca.org
3  Maria Iriarte, SB#150704
   Maria.iriarte@disabilityrightsca.org
4  DISABILITY RIGHTS CALIFORNIA
   1111 Sixth Avenue, Suite 200
5  San Diego, CA 92101
   Telephone: (619) 239-7861
6  FAX: (619) 239-7906

7  Amy Vandeveld, SB#:137904
   Law Offices of Amy Vandeveld
8  1850 Fifth Avenue, Suite 22
   San Diego, CA 92101
9  (619)231-8883
   Fax: (619)231-8329

10

11 Attorneys for plaintiffs
   JANE DOE and JOHN DOE

12

13                    U.S. DISTRICT COURT

14           SOUTHERN DISTRICT OF CALIFORNIA

15 JANE DOE, and JOHN DOE a minor, by      )  Case No.:  **'11CV1829 H    NLS**
   JANE DOE, custodial parent and          )
16 representative,                          )  COMPLAINT FOR INJUNCTIVE,
                                            )  DECLARATORY AND MONETARY
17                                          )  RELIEF; DEMAND FOR JURY TRIAL
              Plaintiffs,                   )
18                                          )
         vs.                                )
19                                          )
   SAN DIEGO RESCUE MISSION, INC., and      )
20 JENNA HILLMAN,                           )
                                            )
21            Defendants.                   )
                                            )
22

23                   **I. INTRODUCTION**

24 1.     This complaint challenges the unlawful discriminatory actions of SAN DIEGO RESCUE

25 MISSION, INC. (hereinafter "the MISSION") in failing and refusing to reasonably accommodate

26 plaintiff JANE DOE, a woman with disabilities including debilitating pregnancy-related

27 complications; and thereafter wrongfully evicting her and her then one-year old son JOHN DOE

28 from the MISSION's Women and Children's Shelter Program into the streets right before the

1    Christmas holidays. These difficult circumstances forced JANE DOE to eventually return to her

2    abusive husband in order to avoid homelessness. Defendant the MISSION thereby deprived JANE

3    DOE and her son not only of immediate access to critically needed shelter but also of the

4    opportunity to be eligible for and obtain a bed in the MISSION's federally funded Transitional

5    Housing Program. The MISSION's actions were based on JANE DOE's disabilities, familial status,

6    sex, marital status, and/or religion in violation of various federal and state civil rights laws. Plaintiffs

7    seek declaratory, injunctive and monetary relief to end these discriminatory practices and ensure that

8    people with disabilities, pregnant women, and persons who do not wish to convert to the evangelical

9    Christianity aggressively promoted by the MISSION and their children have full and equal access to

10   the MISSION's shelter and transitional housing programs.

11                                **II. JURISDICTION AND VENUE**

12   2.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiffs'

13   claims arise under the laws of the United States. Pursuant to 28 U.S.C.§1367, this Court has

14   supplemental jurisdiction over the state law claims because plaintiffs' state law claims are related to

15   plaintiffs' federal law claims, arise out of a common nucleus of operative facts and form part of the

16   same case or controversy under Article III of the U.S. Constitution.

17   3.      Venue is proper in this Judicial District because plaintiffs' claims arise from unlawful

18   conduct occurring in San Diego County, California.

19

20                                        **III. PARTIES**

21          A.      **Plaintiffs**

22   4.      Plaintiff, suing under the fictitious name of JANE DOE, is a resident of San Diego County

23   California and is a person with psychiatric and physical disabilities.

24   5.      JANE DOE has a history of unusual and debilitating pregnancy-related complications that

25   have exacerbated these underlying disabling conditions.

26   6.      JANE DOE is a qualified individual with disabilities within the meaning of the

27   Rehabilitation Act of 1973 29 U.S.C. §706(8) because at all relevant times her physical and

28   psychiatric impairments, including her disabling pregnancy, substantially limited one or more major

1  life activities; and because she meets the essential eligibility requirements for the Women and

2  Children's Shelter and Transitional Housing Programs run by the MISSION.

3  7.      In addition, at all relevant times, JANE DOE met the definition of disability as defined under

4  the federal Fair Housing Act, 42 U.S.C. §3602(h); and as defined under the California Unruh Act,

5  the Disabled Person's Act and the California Fair Employment and Housing Act.  Gov. Code §§

6  12926 and 12926.1.

7  8.      Plaintiff JANE DOE is a practicing Mormon and does not wish to convert to the evangelical

8  Christianity promoted by the MISSION.

9  9.      At all relevant times, JANE DOE was legally married to her husband.  However, the spouses

10  were separated a few months prior to the time JANE DOE moved into the MISSION's shelter and

11  remained separated until shortly after JANE DOE and her son were evicted from the shelter.

12  Throughout their relationship, JANE DOE's husband has subjected her to severe abuse. At all

13  relevant times JANE DOE has been and continues to be interested in obtaining housing at the

14  MISSION's Transitional Housing Program.

15  10.     Plaintiff suing under the fictitious name of JOHN DOE was born in 2008, is the son of

16  plaintiff JANE DOE and is a child with developmental disabilities.  He is suing through JANE DOE,

17  his custodial parent and legal representative.

18      **B.    Defendants**

19  11.     Defendant the MISSION is a non-profit religious and charitable corporation registered in the

20  state of California whose general purpose, according to its bylaws, is "the advancement and

21  promotion of Christianity, both in its evangelical and social message."

22  12.     The MISSION runs shelter programs for homeless individuals including an emergency

23  shelter for women and children called "Nueva Vida;" a one year Women and Children's Shelter

24  Program; a similar one year program for men; and a Transitional Housing Program.

25  13.     The Transitional Housing Program is open only to graduates of the MISSION's year-long

26  programs.

27  14.     All the MISSION's shelter programs are run out of one building located at 120 Elm Street, in

28  the city of San Diego, California (hereinafter "Elm Street").

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

15. Defendant JENNA HILLMAN (hereinafter "HILLMAN"), at all times herein mentioned, was the director of the one year Women and Children's Shelter Program for the MISSION.

16. HILLMAN is sued both in her individual and official capacities.

17. Defendant HILLMAN was responsible, in whole or in part, for the discriminatory policies and practices of the Women and Children's Shelter Program.

18. Defendants the MISSION and HILLMAN are agents, servants and employees of each other and in all matters herein alleged, were acting in the course and scope of such agency, service, and employment.

## IV. FACTS

### A. Operations of the San Diego Rescue Mission

**Shelter Programs**

19. The MISSION's year long shelter programs seek to bring residents "closer to Christ" by mandating attendance at Chapel Service and Bible study and by incorporating religious instruction into a full-time schedule of classes covering such subjects as addiction recovery, parenting, money management, remedial education, and domestic violence.

20. Residents who are affiliated with different faiths, or who are atheists or agnostics are allowed to enter the program, but are subjected to intense proselytizing while residing there. Such residents are prohibited from practicing their faith and from discussing their beliefs while in the program.

21. All residents are expected to follow the MISSION's strict code of sexual conduct that condemns all non-marital, extra-marital or same-sex sexual relations.

22. Graduation from the Women and Children's year long Shelter Program may be delayed or denied until a resident of the Program has affiliated with an approved church.

23. Likewise, all applicants for employment at Elm Street must explain how they would support the MISSION's Christian faith.

24. Once participants are accepted into the Transitional Housing Program, they are no longer subjected to these requirements.

25. However, a bed in the Transitional Housing Program is only offered to persons whom the MISSION deems to be the "highest level" of graduates of the year-long programs, and the MISSION

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

1    accepts no applicants from the outside.

2    26.    Participants in the Transitional Housing Program are housed in a designated section of Elm

3    Street while continuing to use the dining room, library, computer room, and chapel and other areas

4    utilized by residents of the year-long programs.

5    27.    Residents of the Transitional Housing Program may remain there as long as one year after

6    graduation depending upon their need.

7    **Government funding**

8    28.    Prior to 2004, the MISSION housed its various programs in three separate facilities.  In 2004,

9    the MISSION consolidated all of its programs into the Elm Street building, an abandoned six story

10   building that formerly housed Harbor View Hospital.

11   29.    In order to pay for the rehabilitation of Elm Street, a project costing a total of 23 million

12   dollars, the MISSION sought and obtained several forgivable loans or revocable grants from

13   government agencies including: (1) a forgivable $2,000,000 loan at 3 percent simple interest from

14   the Redevelopment Agency of the City of San Diego; (2) a $500,000 grant from the State of

15   California Department of Housing and Community Development through the California Emergency

16   Housing and Assistance Program (Proposition 46 funds); and (3) a revocable grant of $402,368 in

17   federal Economic Development Initiative Funds from the Department of Housing and Urban

18   Development (HUD) provided to the City of San Diego and granted to the Mission by the San Diego

19   Housing Commission (hereinafter "the Commission").

20   30.    Each of these loans/grants requires, as a condition of the grant pursuant to various federal and

21   state laws regulating the use of public funds, compliance with state and federal anti-discrimination

22   laws prohibiting discrimination based on grounds such as race, religion, disability, gender, familial

23   status, marital status or sexual orientation. In addition, the MISSION's agreement with the

24   Redevelopment Agency prohibits using the funds to promote any religion or to fund any

25   proselytizing activities.

26   31.    Each of the loans/grants becomes due and payable upon default by the MISSION on the

27   terms of the grant or loan agreement.

28   32.    The HUD funding was provided in the form of an Economic Development Initiative (EDI)

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

1  grant.

2  33.     Defendant the MISSION is listed by name as the subgrantee in the Grant agreement between

3  HUD and the Commission.

4  34.     The Commission agreed that the grant funds would be made available to the MISSION in

5  accordance with HUD's Equal Opportunity Requirements including compliance with section 504 of

6  the Rehabilitation Act and the federal Fair Housing Act as amended.

7  35.     In the Declaration of Covenants, Conditions and Restrictions executed on September 30,

8  2005 for the EDI grant, the MISSION agreed that it would not "illegally discriminate against any

9  employee, person or applicant for employment and/or housing because of race, age, sexual

10  orientation, marital status, color, religion, sex, handicap, national origin, or any other basis

11  prohibited by law."

12  36.     Similar requirements are part of the other loans and grants.

13          **B.      Facts Regarding Plaintiffs**

14  37.     JANE DOE is a young woman with both psychiatric disabilities (post-traumatic stress

15  disorder and bipolar disorder) and physical disabilities.

16  38.     JANE DOE's physical impairments include a heart condition (tachyarrhythmia) which causes

17  shortness of breath and palpitations; asthma (for which she uses a nebulizer); vertigo; fainting spells;

18  chronic migraine headaches; and a history of unusual and debilitating pregnancy-related

19  complications that exacerbated her underlying conditions.

20  39.     JANE DOE first made contact with the MISSION in October, 2009.  At that time, she was

21  separated from her husband and was staying temporarily with a family member.  When she was no

22  longer able to stay with the family member, JANE DOE applied for shelter at the MISSION's

23  Women and Children's Shelter Program.

24  40.     During the interview by the MISSION, in which Defendant HILLMAN participated, JANE

25  DOE was asked about and disclosed her religion and her psychiatric and physical disabilities.  JANE

26  DOE was informed of the religious requirements of the Program.

27  41.     Because she was in urgent need of shelter, JANE DOE reluctantly agreed to comply with

28  these religious requirements.

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

1   42.    On October 27, 2009, JANE DOE was accepted into the Program.

2   43.    During the first three weeks of residing at Elm Street, JANE DOE maintained full

3   participation in the 7:00 a.m. to 7:00 p.m. Women and Children's Shelter Program consisting of two

4   hours of church services every day except Saturdays (one hour in the morning and one hour in the

5   evening), and required attendance at classes such as Bible study, child development, drug

6   rehabilitation, boundaries in relationships and anger management.

7   44.    All classes, regardless of subject, were imbued with the evangelical Christian point of view

8   of the MISSION, which differed significantly from JANE DOE's Mormonism.

9   45.    The MISSION was openly hostile to Mormonism and other religions not its own. At one

10  class, the teacher made strongly disparaging remarks in front of the class about the Mormon religion.

11  46.    Throughout JANE DOE's stay at Elm Street, residents who embraced or appeared to embrace

12  the faith of the MISSION were given favorable treatment by teachers, case managers and other staff,

13  while those who continued to hold religious or moral views that differed from the MISSION's were

14  subjected to harsh treatment.

15  47.    In early November 2009, JANE DOE discovered that she was pregnant and informed her

16  case manager of the pregnancy and that her husband, from whom she was separated, was not the

17  father.

18  48.    Once the MISSION's staff learned of the pregnancy and continuing until the end of

19  plaintiffs' stay at Elm Street, defendants and their agents and employees made groundless

20  accusations that JANE DOE was having constant illicit sex.

21  49.    Moreover, defendants and their agents and employees repeatedly taunted JANE DOE that her

22  outings for medical appointments probably involved meetings with paramours and that the physical

23  problems with her pregnancy that soon developed were the consequences of JANE DOE's alleged

24  sexual involvements.

25  50.    JANE DOE had expressed an interest to the MISSION's staff in getting help in attending

26  school and obtaining employment, services available to other program participants.

27  51.    However, once defendants were informed of JANE DOE's pregnancy, a staff member told

28  her that due to her pregnancy, it was no longer appropriate for her to participate in such activities.

7

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

52.    By mid-November, 2009, JANE DOE had become extremely ill with frequent vomiting resulting in severe dehydration.

53.    Also, she experienced an aggravation of her underlying disabilities-including worsening vertigo, anxiety, and migraines.

54.    While living at Elm Street, she made several trips to the emergency room.   During a visit to the emergency room at Sharp Memorial Hospital on November 25, 2009, JANE DOE was diagnosed with acute Hyperemesis Gravidarum and dehydration.

55.    On several occasions, JANE DOE requested from the MISSION's staff that she be permitted to attend classes on a reduced schedule and lay down for an hour or so when she was feeling extremely ill.

56.    Defendants and their agents and employees failed and refused to provide reasonable accommodations and told JANE DOE that she needed to attend all assigned classes on a full-time basis with the sole exception of excused doctor's visits.

57.    JANE DOE was repeatedly reprimanded, written up for violating policy and forced to do extra chores as punishment because she was late to class or had to leave a class because she was vomiting or otherwise felt sick.

58.    On one occasion, JANE DOE was feeling ill and lay down on a mat in the Learning Center room. Defendant HILLMAN loudly reprimanded JANE DOE for doing so.

59.    JANE DOE's doctors had also requested that she be permitted to snack as needed and JANE DOE communicated this request to the MISSION.  HILLMAN and other agents and employees of the MISSION refused to accommodate this request.

60.    Despite JANE DOE's pregnancy-related complications and her acute symptoms, she continued to attend the majority of classes required of her.

61.    While at Elm Street, JANE DOE took the bus to get to her medical appointments.

62.    JANE DOE's psychiatric disability causes her to suffer severe anxiety and panic attacks when traveling alone on the bus or while otherwise alone in public.   Sometimes, the panic attack would precipitate an asthma attack.

63.    During the first thirty days of her stay at the MISSION, JANE DOE was subjected to

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

1 | program rules that did not allow her to leave the premises without a program escort.

2 | 64.    This permitted JANE DOE to go to her medical appointments accompanied by her escort and
3 | she was thus able to avoid the onset of panic attacks.

4 | 65.    After the thirty days had expired, JANE DOE requested from her assigned case manager as a
5 | reasonable accommodation that she be allowed to continue to have someone from the MISSION
6 | accompany her on the bus to medical appointments, or when no one was available, that her sister be
7 | allowed to accompany her.

8 | 66.    JANE DOE explained about her panic attacks and why she needed the accommodation.

9 | 67.    One of the employees at the MISSION mocked JANE DOE, accused her of lying about her
10 | need to be accompanied and that JANE DOE was really planning to "sneak out and do something
11 | wrong."

12 | 68.    Defendants and their agents and employees refused to grant JANE DOE the accommodation.
13 | Having no other alternative and being unable to board the bus alone, JANE DOE continued to meet
14 | up with her sister to go to medical appointments anyway.

15 | 69.    On one occasion when she was caught doing so, a staff member employed by the MISSION
16 | harshly reprimanded JANE DOE and wrote her up for violating the "rules."

17 | 70.    On or about December 5, 2009, one of the case managers employed by the MISSION
18 | informed JANE DOE that she would need to find another place to live because JANE DOE's
19 | pregnancy had rendered her "too sick," and she was failing to complete all her classes in time. JANE
20 | DOE was given a deadline of December 22, 2009 to move out.

21 | 71.    JANE DOE made a good faith effort to find an alternate shelter or program that would accept
22 | her and JOHN DOE without success.

23 | 72.    A few days before plaintiffs were scheduled to leave Elm Street, JANE DOE's mother called
24 | the MISSION and spoke to an employee there.  JANE DOE's mother asked for more time for the
25 | plaintiffs, stating that she could help her daughter with money soon. The employee refused the
26 | mother's request.

27 | 73.    On December 22, 2009, plaintiffs were forced to leave Elm Street.

28 | 74.    After plaintiffs were ejected from Elm Street with no place to go, JANE DOE arranged for an

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

emergency loan from a friend and rented a room for herself and JOHN DOE for a few days. The money ran out right after Christmas, and in order to avoid having to live on the streets, JANE DOE returned to live with her estranged husband.

## V. CLAIMS

### FIRST CAUSE OF ACTION
[Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794]

75.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one through seventy-four above as if fully set forth herein.

76.     The MISSION is a recipient of federal financial assistance in that the organization has received funding from HUD which constitutes the receipt of federal financial assistance either directly or through a contractual, licensing or other arrangement. 24 C.F.R. § 8.4(b)(1).

77.     The MISSION is principally engaged in the business of providing housing, education, and social services, and is a recipient of federal funding for at least some of its programs. Therefore, all programs operating out of Elm Street, including the Women and Children's Shelter Program and the Transitional Housing Program, are prohibited from discrimination based on disability under the provisions of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794(b)(3)(A)(ii).

78.     Further, Section 504 of the Rehabilitation Act requires that otherwise qualified persons with disabilities be provided with meaningful access to federally funded programs.  In order to assure meaningful access, reasonable accommodations or modifications of program requirements may be required unless the recipient of federal funding can demonstrate that such modifications would result in a fundamental alteration in the nature of the program.  29 U.S.C.§794;  24 C.F.R. §§ 8.3 and 8.4; *Alexander v. Choate* 469 U.S. 287,  301 (1985).

79.     Defendants' actions and omissions excluded plaintiffs from participation in, denied plaintiffs the benefits of, and subjected plaintiffs to discrimination solely based on plaintiff JANE DOE's actual or perceived disabilities, including JANE DOE's unusual and debilitating pregnancy-related complications, and further, were in retaliation for JANE DOE's exercise of her rights, in violation of section 504 of the Rehabilitation Act.

80.     Defendants' acts of disparate treatment and retaliation against plaintiff JANE DOE included

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

the following:

      a. The numerous punitive measures taken against JANE DOE;

      b. The wrongful and retaliatory eviction of plaintiffs from the Women and Children's Shelter Program; and,

      c. The denial of the opportunity to apply for and be considered for the MISSION's Transitional Housing Program.

81.    Plaintiffs suffered severe emotional distress and damages in the past and continue to suffer distress and damages due to Defendants' disparate treatment and retaliation in violation of Section 504.    Defendants and their agents and employees' conduct was egregious, willful, intentional, and carried out with actual malice and with the intent to cause damages and injury to plaintiffs or with a wanton and reckless disregard of plaintiffs' rights and the consequences to plaintiffs.

82.    During all relevant times, defendants also failed to put in place and implement policies and procedures providing for reasonable accommodations or modifications of program rules and requirements for qualified residents with disabilities when needed to ensure full and equal program access.

83.    Defendants and each of them denied JANE DOE meaningful access to the MISSION's Women and Children's Shelter Program in violation of Section 504 of the Rehabilitation Act by repeatedly failing and refusing to provide reasonable accommodations or program modifications that JANE DOE requested for her physical and psychiatric disabilities, including defendants' refusal to grant such modifications for JANE DOE's unusual and debilitating pregnancy complications.

84.    Defendants' denial of requested reasonable accommodations or modifications of program rules included the following acts and omissions:

      a. Defendants' failure and refusal to allow JANE DOE to lie down and to snack as needed;

      b. Defendants' failure and refusal to allow JANE DOE to attend classes on a reduced schedule such as by extending the period of time for JANE DOE to complete program requirements; and,

      c. Defendants' failure and refusal to allow JANE DOE's sister to accompany her on bus rides to attend medical appointments.

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

85.     Plaintiff JANE DOE suffered severe emotional distress and damages in the past and continues to suffer distress and damages due to Defendants' refusal to provide reasonable program modifications in violation of Section 504.

86.     Plaintiffs have no adequate remedy at law and are therefore entitled to injunctive and other equitable remedies set forth in 29 U.S.C. §794(a) and the Civil Rights Act of 1964, 42 U.S.C. §2000d-7(2).

## SECOND CAUSE OF ACTION
### [Fair Housing Act 42 U.S.C. §3604 et seq.]

87.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one through seventy-four, eighty, eighty-two, and eighty-four above as if fully set forth herein.

88.     The Women and Children's Shelter Program and the Transitional Housing Program operated by defendants out of Elm Street are designed or intended for occupancy by homeless persons as their residences and are therefore "dwellings" as defined by 42 U.S.C. § 3602(b).  See 24 C.F.R. §100.201; *Lakeside Resort Enterprises v. Board of Supervisors* 455 F. 3d 154 (3rd Cir. 2006).

89.     Defendants' actions and omissions as above stated subjected plaintiffs to discrimination based in whole or in part on plaintiff JANE DOE's disabilities or perceived disabilities, sex and familial status (pregnancy), and/or religion thereby making unavailable or denying a dwelling to plaintiffs on the basis of disability, sex and familial status (pregnancy), and/or religion in violation of 42 U.S.C. § 3604(a) and (f)(1).  Further, defendants unlawfully coerced, intimidated, threatened or interfered with the exercise of JANE DOE's rights in violation of 42 U.S.C. §3617.

90.     As a direct and proximate cause of defendants' unlawful, intentional and discriminatory conduct, plaintiffs have suffered, continue to suffer, and will continue to suffer damages and injury as described more fully above.  Defendants and their agents and employees' conduct was egregious, willful, intentional, and carried out with actual malice and with the intent to cause damage and injury to plaintiffs or with a wanton and reckless disregard of plaintiffs' rights and the consequences to plaintiffs.

91.     Further, defendants' failure and refusal to allow JANE DOE requested accommodations including a reduced class schedule, to rest and snack as needed and an escort to medical

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

1  appointments constituted a refusal to make reasonable accommodations in rules, policies, practices

2  or services when such accommodations were necessary to afford individuals with disabilities equal

3  opportunity to use and enjoy housing in violation of 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. §100.204.

4  92.      As a direct and proximate cause of defendants' unlawful failure and refusal to make

5  reasonable accommodations, plaintiffs have suffered, continue to suffer, and will continue to suffer

6  damages and injury as described more fully above.

7  93.      Plaintiffs have no adequate remedy at law and are therefore entitled to an injunction and

8  other equitable remedies provided for under 42 U.S.C.§3613(c)(1).

9                          **THIRD CAUSE OF ACTION**

10  **[FAIR EMPLOYMENT AND HOUSING ACT Government Code § 12900-12996]**

11  94.      Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one

12  through seventy-four, eighty, eighty-two, eighty-nine, and ninety-one above as if fully set forth

13  herein.

14  95.      The Women and Children's Shelter Program and the Transitional Housing Program operated

15  by defendants out of Elm Street are occupied as or intended for occupancy by homeless persons as

16  their residences and are therefore "housing accommodations" as defined by Government Code §

17  12927(d) .

18  96.      Defendants' actions and omissions as above stated constituted:  a denial or withholding of

19  housing accommodations; provision of inferior terms, conditions, privileges, facilities, or services in

20  connection with those housing accommodations; harassment in connection with those housing

21  accommodations; and otherwise making unavailable housing accommodations.   Defendants acts and

22  omissions were motivated in whole or in part by JANE DOE's actual or perceived disabilities,

23  pregnancy, and/or religion thereby discriminating on the basis of disability, sex and familial status

24  (pregnancy), marital status (out-of-wedlock pregnancy) and/or religion in violation of the California

25  Fair Employment and Housing Act, Government Code §§12927(c)(1) and 12955(a),(d),(k), and (m).

26  97.      As a direct and proximate cause of defendants' unlawful and discriminatory conduct,

27  plaintiffs have suffered, continue to suffer, and will continue to suffer damages and injury as

28  described more fully above.  Defendants and their agents and employees' conduct was egregious,

1   willful, intentional, and carried out with actual malice and with the intent to cause damage and injury

2   to plaintiffs, or with a wanton and reckless disregard of plaintiffs' rights and the consequences to

3   plaintiffs.

4   98.      Further, defendants' failure and refusal to allow JANE DOE requested accommodation

5   including a reduced class schedule, to rest and snack as needed,  and to allow an escort to medical

6   appointments constituted a refusal to make reasonable accommodations in rules, policies, practices

7   or services when such accommodations were necessary to afford individuals with disabilities equal

8   opportunity to use and enjoy the shelter in violation of the California Fair Employment and Housing

9   Act, Government Code § 12927(c)(1).

10  99.      As a direct and proximate cause of defendants' unlawful failure and refusal to provide

11  reasonable accommodations, plaintiff JANE DOE has suffered, continues to suffer, and will

12  continue to suffer damages and injury as described more fully above.

13  100.     Plaintiffs have no adequate remedy at law and are therefore entitled to an injunction and

14  other equitable remedies provided for under Government Code § 12989.2(a).

15                          **FOURTH CAUSE OF ACTION**

16              **[Unruh Civil Rights Act Civil Code §§51 and 52]**

17  101.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one

18  through seventy-four, eighty, eighty-two, eighty-four, eighty-nine and ninety-one as if fully set forth

19  herein.

20  102.     The MISSION is a "business establishment" as defined by the Unruh Civil Rights Act

21  because it is the functional equivalent of a traditional place of public accommodation providing

22  lodging; carries out business-like functions; and offers its facilities to a broad segment of the public

23  with the support of public funding. Civil Code §51; *Isbister v. Boys Club of Santa Cruz, Inc.* 40

24  Cal.3d 72 (1985).

25  103.     Defendants' actions and omissions as above stated culminating in plaintiffs' wrongful

26  eviction from the Women's and Children's Shelter Program and preclusion from being considered

27  for the MISSION's Transitional Housing Program subjected plaintiffs to discrimination on the basis

28  of disability, sex and familial status (pregnancy), marital status (out-of-wedlock pregnancy) and/or

1  religion, thereby denying plaintiffs full and equal accommodations, advantages, privileges and

2  services and constituting arbitrary discrimination in violation of Civil Code §51(b) and (f).

3  104.    As a direct and proximate cause of defendants' unlawful and discriminatory conduct,

4  plaintiffs have suffered, continue to suffer, and will continue to suffer damages and injury as

5  described more fully above. Defendants' and their agents' and employees' conduct was egregious,

6  willful, intentional, and carried out with actual malice and with the intent to cause damage and injury

7  to plaintiffs or with a wanton and reckless disregard of plaintiffs' rights and the consequences to

8  plaintiffs. Plaintiffs are therefore entitled to actual and statutory damages including treble damages

9  as provided pursuant to Civil Code §52(a).

10  105.    Plaintiffs have no adequate remedy at law and are therefore entitled to an injunction and

11  other equitable remedies provided for under Civil Code §52(c)(3).

12
13

**FIFTH CAUSE OF ACTION**
**[DISABLED PERSONS ACT Civil Code §§ 54, 54.1 and 54.3]**

14  106.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one

15  through seventy-four, seventy-nine, eighty, eighty-two, eighty-three and eighty-four as if fully set

16  forth herein.

17  107.    Defendant MISSION's Women and Children's Shelter Program and Transitional Housing

18  Program are lodging places or places of public accommodation under Civil Code § 54.1.

19  108.    Defendants' actions and omissions as above stated, including the maintenance of

20  discriminatory policies against people with disabilities, denied plaintiffs full and equal access as

21  other members of the public thereby discriminating against plaintiffs based on disability in violation

22  of Civil Code §§ 54 and 54.1.

23  109.    As a direct and proximate cause of defendants' unlawful conduct, plaintiffs have suffered,

24  continue to suffer and will continue to suffer damages and injury as described more fully above.

25  Plaintiffs are therefore entitled to actual and statutory damages including treble damages as provided

26  pursuant to Civil Code §54.3.

27  110.    Plaintiffs are currently not seeking injunctive relief under Civil Code § 55 as that relief is

28  otherwise available under other statutes.

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

## SIXTH CAUSE OF ACTION
### [Gov. Code § 11135]

111.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one through seventy-four, seventy-nine, eighty, eighty-three, eighty-four, eighty-nine, ninety-one, ninety-six, ninety-eight, one hundred three, and one hundred eight as if fully set forth herein.

112.    The MISSION is funded directly by the State of California or has received financial assistance from the State of California.

113.    The MISSION has unlawfully denied full and equal access to the benefits of their shelter programs and unlawfully subjected plaintiffs to discrimination based on JANE DOE's religion, sex (pregnancy), and actual or perceived disabilities in violation of Government Code §11135.

114.    Plaintiffs have no adequate remedy at law and are therefore entitled to an injunction and other equitable remedies provided for under Government Code §11139.

## SEVENTH CAUSE OF ACTION
### [Intentional Infliction of Emotional Distress]

115.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one through seventy-four, seventy-nine, eighty, eighty-nine, ninety-one, and ninety-six as if fully set forth herein.

116.    Defendants and each of them had knowledge of JANE DOE's psychiatric and physical disabilities and her particular susceptibility to emotional distress.

117.    Said defendants' conduct was intentional, unlawful, and malicious and done for the purpose of causing JANE DOE to suffer humiliation, mental anguish and emotional and physical distress or with a wanton and reckless disregard of JANE DOE's rights and the consequences to JANE DOE.

118.    As a direct and proximate result of the acts alleged above, JANE DOE suffered, is suffering and will continue to suffer humiliation, mental anguish and emotional and physical distress more fully described above.

## EIGHTH CAUSE OF ACTION
### [Negligence]

119.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs one

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

1  through seventy-four, seventy-nine, eighty, eighty-two through eighty-four, eighty-nine, ninety-one,

2  ninety-six, ninety eight, one hundred three and one hundred eight as if fully set forth herein.

3  120.    Defendants owe Plaintiffs a legal duty to operate their shelter programs in a manner that is

4  free from unlawful discrimination based on disability, religion, sex, familial status, and marital status

5  and in full compliance with all applicable laws; and a duty to hire, train, supervise and discipline the

6  MISSION's employees, agents, and volunteers to fulfill their duty not to discriminate.  Defendants

7  negligently breached that duty by violating applicable discrimination laws; by failing to put in place

8  policies providing for reasonable accommodation of shelter residents with disabilities; and by failing

9  to properly hire, train, supervise and discipline the MISSION's managers, employees, agents, and

10  volunteers in their legal obligations under such laws.

11  121.    As a direct and proximate cause of defendants' unlawful and negligent conduct, plaintiffs

12  have suffered, continue to suffer, and will continue to suffer damages and injury as described more

13  fully above.

14  **VI. RELIEF**

15  **Plaintiffs pray that this Court:**

16      1.  Declare that the actions and omissions alleged herein are in violation of Section 504 of

17          the Rehabilitation Act, 29 U.S.C. §794;  the Fair Housing Act, 42 U.S.C.§3604 et seq.;

18          the California Fair Employment and Housing Act, Government Code § 12900 et seq.;  the

19          Unruh Civil Rights Act, Civil Code §51; the Disabled Person's Act, Civil Code §§54 and

20          54.1; and Government Code § 11135;

21      2.  Issue a preliminary and permanent injunction pursuant to 29 U.S.C.§ 794(a), 42 U.S.C. §

22          2000d-7(2), 42 U.S.C. § 3613(a)(1), Gov. Code §12989.2(a), Civil Code §52, and Gov.

23          Code § 11139 directing Defendants to end their discriminatory practices and allow

24          Plaintiffs to enter the MISSION's Transitional Housing program;

25      3.  Order that Defendants take appropriate affirmative action to ensure that the activities

26          complained of above are not engaged in again by them or any of their agents, employees,

27          or volunteers;

28      4.  Retain jurisdiction over the Defendants until such time as the Court is satisfied that

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

Defendants' unlawful policies, practices, acts and omissions complained of herein cannot recur;

5. Award to plaintiffs all appropriate damages, including actual, statutory, treble damages, and exemplary and punitive damages according to proof;

6. Award to plaintiffs reasonable attorney's fees pursuant to 42 U.S.C. §1988, 29 USC §794a (a)(2)(b) , 42 U.S.C.§3613(c)(2), Civil Code §52, Civil Code § 54.3, Gov. Code § 12989.2(a), and Code of Civil Procedure §1021.5;

7. Award to plaintiffs expert witness fees pursuant to Gov. Code §12989.2(a);

8. Award to plaintiffs costs of suit; and

9. Such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues that may be tried by a jury.

Dated: August 16, 2011

DISABILITY RIGHTS CALIFORNIA
LAW OFFICES OF AMY VANDEVELD

By:  /s/ Ann E. Menasche
ANN E. MENASCHE
Attorneys for Plaintiffs

COMPLAINT FOR INJUNCTIVE, DECLARATORY AND MONETARY RELIEF; DEMAND FOR JURY TRIAL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Jane Doe, and John Doe a minor, by Jane Doe, custodial parent and representative

**DEFENDANTS**

San Diego Rescue Mission, Inc. and Jenna Hillman

(b) County of Residence of First Listed Plaintiff    San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

See attachment

Attorneys (If Known)

**'11CV1829 H    NLS**

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C Section 794, 42 U.S.C. Section 3604 et. seq.

Brief description of cause:
Discrimination based on disability, familial status, sex, marital status and religion

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
08/16/2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ Ann E. Menasche

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Attachment to Civil Cover Sheet
Jane Doe et al. v. San Diego Rescue Mission, et al.

Ann E. Menasche, SB#74774
Ann.menasche@disabilityrightsca.org
L. Bernadette Bautista SB#230384
Bernadette.bautista@disabilityrightsca.org
Maria Iriarte, SB#150704
Maria.iriarte@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1111 Sixth Avenue, Suite 200
San Diego, CA  92101
Telephone:  (619) 239-7861
FAX: (619) 239-7906

Amy Vandeveld, SB#:137904
Law Offices of Amy Vandeveld
1850 Fifth Avenue, Suite 22
San Diego, CA 92101
(619)231-8883
Fax: (619)231-8329